1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    ALFREDO GUERRA-DELGADO,
4    BELINDA BLANCH-BERRIOS,

5         Plaintiffs,                                Civil No. 11-1535 (JAF)

6         v.

7    POPULAR, INC., et al.,

8         Defendants.

9

10                          **<u>OPINION AND ORDER</u>**

11        Alfredo Guerra-Delgado ("Plaintiff"), on behalf of himself and his wife, coplaintiff

12   Belinda Blanch-Berríos, brings suit against Defendants, Popular, Inc. ("Popular, Inc."), Banco

13   Popular de Puerto Rico ("Banco Popular Puerto Rico"), Banco Popular North America, Inc.

14   ("Banco Popular North America"), Plan de Retiro de Banco Popular ("the Plan"), Comité

15   Administrativo de Beneficios de Popular, Inc. ("the Committee"), and unnamed insurers and

16   trustees, administrators and agents, seeking damages under the Employee Retirement Income

17   Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. (Docket Nos. 1; 24–1.) Plaintiff[1]

18   also seeks damages under the federal common-law doctrines of promissory and equitable

19   estoppel, as well as commonwealth law. (Docket Nos. 1; 24–1.) Popular, Inc., Banco Popular

20   Puerto Rico, Banco Popular North America, the Plan, and the Committee (together, "Movants")

21   move for dismissal under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 7.) Plaintiff

---

[1] Throughout this opinion, we refer to "Plaintiff" rather than "Plaintiffs." We use "Plaintiff" for the sake of consistency and ease of reading. We note here again that Plaintiff brings his claim on behalf of both himself and his wife, coplaintiff Belinda Blanch-Berríos. Her interests are affected in the same way as Plaintiff's.

1     requests leave to file an amended complaint, (Docket Nos. 24; 24–1), and opposes Movants'

2     motion to dismiss (Docket No. 27).[2]   Movants reply to Plaintiff's opposition, and oppose

3     Plaintiff's request for leave to file an amended complaint. (Docket No. 39.)

4     **I.**

5     **<u>Allegations</u>**

6            We derive the following allegations from the amended complaint.  (Docket No. 24–1.)

7     In 1998, Plaintiff accepted a job offer to work for codefendant Banco Popular North America

8     (<u>Id.</u> at 3.)  Plaintiff alleges that he accepted the job offer because Banco Popular North America

9     agreed to credit his eighteen previous years of employment with another institution towards the

10    Plan.[3]  (<u>Id.</u>)  Then, in 2000, Plaintiff transferred to Banco Popular Puerto Rico.  (<u>Id.</u>)  To ensure

11    that this transfer would not affect his previous agreement with Banco Popular North America,

12    Plaintiff requested that Banco Popular Puerto Rico confirm in writing that his eighteen years

13    had been credited to the Plan.  (<u>Id.</u>)  In June of 2000, Ms. Madeline Mundo, of Banco Popular

14    Puerto Rico's Benefits Department, wrote a letter confirming that Plaintiff's eighteen years of

15    employment had been credited to the Plan, in addition to two years of credit for the time

16    Plaintiff had worked for Banco Popular North America.[4]  (<u>Id.</u>)

---

[2] For the reasons stated below, we grant Plaintiff's request for leave to file an amended complaint. We, therefore, analyze Movants' motion to dismiss as it relates to Plaintiff's amended complaint (Docket No. 24–1).

[3] Popular, Inc. is the parent corporation of Banco Popular Puerto Rico and Banco Popular North America. (<u>Id.</u> at 2.)  Banco Popular Puerto Rico and Banco Popular North America are subsidiaries of Popular, Inc., with banking operations in Puerto Rico and the state of New York, authorized to do business in their respective jurisdictions.  (<u>Id.</u>)

[4] Plaintiff has provided a copy of this letter and incorporated it (along with the documents listed in the following four notes) in the complaint. (Docket No. 22–2.)  Therefore, our review of these documents does not convert the motion to dismiss into a motion for summary judgment. <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008); <u>Beddall v. State St. Bank and Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998).  Defendants attached a copy of the Plan to their motion to dismiss.  (Docket No. 7–2.)

1          In each of the years from 2000 to 2008, Banco Popular Puerto Rico gave Plaintiff a

2    yearly written "Total Compensation Report."  (Id.)  In each of these reports, Banco Popular

3    Puerto Rico confirmed that the eighteen years Plaintiff had worked before coming to Banco

4    Popular North America (in addition to the two years Plaintiff worked at Banco Popular North

5    America) had been credited to the Plan.[5]  (Id.)

6          In 2005, Banco Popular Puerto Rico discontinued the existing benefits structure.  (Id. at

7    4.)  These changes did not affect employees who had accrued more than ten years towards

8    retirement benefits.  (Id.)  As part of the reorganization, Banco Popular Puerto Rico offered

9    compensation to affected employees who had less than ten years of employment.  (Id.)  Plaintiff

10   was not offered, and did not receive, this compensation.  (Id.)  Plaintiff asserts that this was

11   because he had accrued more than ten years of employment at the time.  (Id.)  In November

12   2005, Plaintiff received a letter confirming that 24.09 years of employment had been credited

13   towards the Plan.[6]  (Id.)

14         Near the end of 2008, Plaintiff contacted Banco Popular Puerto Rico regarding his

15   potential benefits if he were to retire.  (Id.)  Plaintiff received an e-mail dated September 8,

16   2008, which estimated that he would receive approximately $2,356.59 per month.[7]  (Id.)  He

17   also received an "Estimated Pension Calculation" that calculated that he would receive upwards

18   of $2,255.25 a month, depending on the retirement option he chose.  (Id.)

_____

[5] Plaintiff has provided the relevant pages from the reports from 2000, 2004 and 2007. (Docket Nos. 22–3; 22–4; 22–5.)

[6] Plaintiff has provided a copy of this letter. (Docket No. 22–6.)

[7] Plaintiff has provided a copy of this e-mail.  (Docket No. 22–7.)

Civil No. 11-1535 (JAF)                                                                    -4-

1        On December 1, 2008, Plaintiff gave notice that he was planning to retire.  (Id.)  After

2    he had retired, in a letter dated March 19, 2009, Popular, Inc. notified Plaintiff that he had only

3    seven years of service for credit towards the Plan.[8]  (Id.)  This made him eligible for a monthly

4    payment of $570.87.  (Id.)  The letter also informed Plaintiff that based on this calculation,

5    Plaintiff had been erroneously denied the compensation offered in 2005 to employees who had

6    accrued less than ten years of employment.  (Id.)  Popular, Inc., therefore, offered to pay

7    Plaintiff this compensation, in the amount of $18,137.  (Id.)

8        In a 2009 letter written by his attorney, Plaintiff requested reconsideration of  Popular,

9    Inc.'s determination of his years of service for eligibility and credit towards the Plan.  (Id. at 5.)

10   Plaintiff alleges that the correct figures are 25.83 years of eligibility, and 24.83 years of credit.

11   (Id.) In a letter dated July 29, 2009, the Committee reiterated its calculation of monthly benefits

12   at $570.87.  (Id.)  The Committee reiterated its offer to pay $18,137 in back pay.  (Id.)  The

13   letter advised Plaintiff of his rights to present a civil action under ERISA.  (Id.)

14                                                    **II.**

15                             **Motion to Dismiss Under 12(b)(6)**

16   **A.       Standard**

17       A defendant may move to dismiss an action, based solely on the complaint, for the

18   plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

19   In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all

_____

[8] Movants have attached a copy of the letter to their motion to dismiss.  (Docket No. 7–3.)  Plaintiff references the exhibit in his amended complaint. (Docket No. 24–1 at 4.) Neither Plaintiff nor Movants are clear about which entity of Popular, Inc. was responsible for writing the letter.  Plaintiff writes that "Banco Popular" notified him of the seven years' credit, then says "Popular Group" offered to pay $18,137 in back pay. (Id.) The letterhead and address of the attached letter lists "Popular, Inc." as the sender.

1 reasonable inferences in favor of the [plaintiff]." <u>Wash. Legal Found. v. Mass. Bar Found.</u>, 993

2 F.2d 962, 971 (1st Cir. 1993).

3   "[A]n adequate complaint must provide fair notice to the defendants and state a facially

4 plausible legal claim." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

5 In considering a complaint's adequacy, we disregard "statements in the complaint that merely

6 offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of

7 action." <u>Id.</u> (internal quotation marks omitted).   We then take as true what remains,

8 "[n]onconclusory factual allegations . . . even if seemingly incredible." <u>Id.</u>  On the basis of

9 those properly pled facts, we assess the "reasonableness of the inference of liability that the

10 plaintiff is asking the court to draw." <u>Id.</u> at 13.

11 **B.** **<u>Analysis</u>**

12   **1.** **<u>Proper Defendants</u>**

13     **a.** **<u>Popular, Inc., Banco Popular Puerto Rico, and Banco Popular North</u>**
14      **<u>America</u>**

15   Movants argue that the complaint should be dismissed as to Popular, Inc., Banco Popular

16 Puerto Rico, and Banco Popular North America (together, "Popular codefendants"), because

17 the complaint lacks any well-pled factual allegations that they acted as fiduciaries.  (Docket

18 No. 39 at 5.)  "ERISA contemplates actions against an employee benefit plan and the plan's

19 fiduciaries. With narrow exception, however, ERISA does not authorize actions against

20 nonfiduciaries of an ERISA plan." <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 35 (1st Cir. 1998).  "A

21 party is a fiduciary to the extent that he or she exercises discretion over the management of the

22 plan or its funds or over its administration." <u>Livick v. Gilette Co.</u>, 524 F.3d 24, 29 (1st Cir.

Civil No. 11-1535 (JAF)                                                                      -6-

1    2008) (internal quotation marks and citations omitted).  A party not named as a fiduciary in the

2    plan, including an employer, can become a fiduciary to the extent it undertakes fiduciary duties.

3    Id. (internal quotation marks and citations omitted).

4           The parties dispute whether the Popular codefendants' alleged actions qualify as

5    fiduciary duties.  Both parties attempt to situate their versions of the facts within favorable case

6    law.   Movants argue this case is like those in which defendants undertook only routine,

7    ministerial duties.   (Docket No. 39 at 6.) "The mere exercise of physical control or the

8    performance of mechanical administrative tasks generally is insufficient to confer fiduciary

9    status."  Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010)

10   (internal quotation marks and citations omitted).  Providing estimates of benefits has been held

11   to be a ministerial function not conferring fiduciary status.  Livick, 524 F.3d at 29.

12          On the other hand, Plaintiff argues, Popular codefendants did more than simply execute

13   ministerial duties.  (Docket No. 27 at 6.)  The First Circuit has held that an employer may be

14   sued as a fiduciary if it "set up an internal committee with little if any, separate identity, and in

15   fact took control of the function allegedly delegated to that committee."  Law v. Ernst & Young,

16   956 F.2d 364, 74 (1st Cir. 1992).  Plaintiff also argues that his case is similar to Varity Corp.

17   v. Howe, 516 U.S. 489 (1996).  In that case, an employer deliberately misled its employees

18   regarding the security of their future benefits.  Id. at 494.  In support of its effort to induce its

19   employees to change their benefit and employment plan, the employer falsely assured its

20   employees that the security of their benefits would not be at risk if they agreed to the change.

21   Id. The newly-formed company was, in fact, insolvent, and the employees lost their benefits.

22   Id.  There, the Supreme Court held that the employer could be sued as a fiduciary.  Id. at 501.

1    In this case, we analyze the sufficiency of the complaint as it relates to each of the three

2    specific Popular codefendants.  Movants argue that the complaint makes no factual allegations

3    that Popular, Inc. and Banco Popular North America acted as fiduciaries.  (Docket No. 39 at 7.)

4    With respect to Popular, Inc., we agree.  The complaint lacks any specific allegations that

5    Popular, Inc. acted as a fiduciary.  (Docket No. 24–1.)  Nor does Plaintiff's opposition cite any

6    specific allegations that Popular, Inc. acted as a fiduciary, instead focusing on the involvement

7    of Banco Popular Puerto Rico and Banco Popular North America.  (Docket No. 27 at 6–10.)

8    We, therefore, dismiss the first cause of action as to Popular, Inc.  See Watson v. Deaconess

9    Waltham Hosp., 298 F.3d 102, 117 (1st Cir. 2002) (finding that plaintiff failed to plead

10   fiduciary status of employer's parent company).

11   Regarding Banco Popular North America, Plaintiff alleges that this entity "agreed to

12   credit eighteen years towards the Banco Popular Pension Plan."  (Docket No. 24–1 at 3.)

13   Movants do not address this allegation directly, instead arguing that: "[I]t is clear that [Banco

14   Popular North America] do[es] not have any duties assigned to them under the Plan and that

15   they were not involved in the ministerial tasks of providing pension estimates to Mr. Guerra or

16   information regarding the plan and/or Mr. Guerra's benefits."  (Docket No. 39 at 7.)  This

17   response fails to rebut Plaintiff's allegations that Banco Popular North America induced him

18   to accept employment by offering to credit eighteen years of employment towards his benefit

19   plan.  We find these allegations sufficient for the complaint to proceed against Banco Popular

20   North America.  See Varity, 516 U.S. at 501 (finding employer's false assurances regarding

21   security of future benefits, while inducing employee to switch employment plan, sufficient to

22   confer fiduciary status).

1    We also find that the amended complaint is sufficient to proceed against Banco Popular

2    Puerto Rico.  Plaintiff alleges that in June of 2000, Banco Popular Puerto Rico provided

3    Plaintiff with a letter, on Banco Popular letterhead, stating that eighteen years of employment

4    had been credited towards the Plan, and that two more years had been credited for his time at

5    Banco Popular North America. (Docket No. 24–1 at 3.)  The letter was signed by Ms. Madeline

6    Mundo, of Banco Popular's Benefits Department.[9]  (Id.)  Plaintiff alleges that Banco Popular

7    Puerto Rico continued to confirm, every year since 2000, that his eighteen years of previous

8    employment were being credited to his pension plan.  (Id.)

9    The actions that Plaintiff alleges go well beyond merely mechanical calculations of

10   benefit estimates, as Movants contend.  This is not a case in which a human resources officer

11   provided calculations that contradicted an otherwise clear, written policy provided by the

12   employer.  See Livick, 524 F.3d at 30 (emphasizing that plaintiff had already received clear

13   written notice that prior employment years would not be considered as part of current

14   employer's pension plan).  Rather, Banco Popular Puerto Rico appears to have given misleading

15   information to Plaintiff regarding the security of his future benefits, at a time when he might

16   have chosen to pursue other employment opportunities.  Varity, 516 U.S. at 101.  The fact that

17   Banco Popular Puerto Rico employees used company letterhead to communicate with Plaintiff,

18   regarding the security of his future benefits, also suggests a finding of fiduciary activity.  See

19   Law, 956 F.2d at 374 (explaining that employees using company letterhead for benefit-related

20   communications suggests employer acted as fiduciary).  Therefore, Plaintiff's first cause of

21   action will be allowed to proceed against Banco Popular Puerto Rico.

---

[9] Plaintiff provides a copy of the letter.  (Docket 22–2.)

1          **b.     Committee in its Individual Capacity**

2          Movants next argue that the complaint should be dismissed as to the Committee in its

3    individual capacity, because it lacks any allegations that the Committee breached its fiduciary

4    obligations under ERISA.  (Docket Nos. 7 at 10–11; 39 at 8–11.)  ERISA provides that "[a]ny

5    money judgment under this subchapter against an employee benefit plan shall be enforceable

6    only against the plan as an entity and shall not be enforceable against any other person unless

7    liability against such person is established in his individual capacity under this subchapter."  29

8    U.S.C. § 1132(d)(2).  §1109(a), in turn, provides that "[a]ny person who is a fiduciary with

9    respect to a plan who breaches any of the responsibilities, obligations or duties imposed on

10   fiduciaries by this subchapter shall be personally liable . . . ."  The parties also agree that to

11   establish "individual liability against a plan administrator requires a finding that the

12   administrator breached its fiduciary obligations under ERISA."  (Docket Nos. 27 at 10; 39 at

13   8.)  We agree.  Evans v. Akers, 534 F.3d 65, 68 (1st Cir. 2008) (holding that ERISA allows

14   fiduciaries to be held personally liable for fiduciary breaches).  In dispute is whether Plaintiff's

15   complaint contains sufficient allegations that the Committee breached a fiduciary duty.

16         Regarding this question, Movants direct us to only one case from the First Circuit,

17   Gómez-Gonzalez, 626 F.3d at 665.  (Docket No. 39 at 8.)  We note that this case provides little

18   guidance about what constitutes a breach of fiduciary duty.  Movants also refer us to a more

19   instructive case from the Third Circuit, Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d

20   300, 309 (3d Cir. 2008).  There, the Third Circuit held that a plan administrator could be held

21   individually liable, because it, "as plan administrator, owed a fiduciary duty which it breached

22   by refusing to pay the claim without any justification."  Id.

1    We find that Plaintiff has stated a claim for breach of fiduciary duty against the

2    Committee. The amended complaint alleges that the Committee (together with other defendants)

3    represented to Plaintiff that he had 25.83 years of service for eligibility and 24.83 years of

4    service for credit. (Docket No. 24–1 at 5.) Plaintiff also alleges that his employment contract

5    stipulated that his eighteen years of employment would be credited towards his pension. (Id.)

6    After Plaintiff retired, the Committee informed him that those eighteen years had not been

7    credited, and that he would receive a greatly-reduced monthly payment. (Id.) At the motion to

8    dismiss stage of the proceedings, we find these allegations are sufficient to proceed against the

9    Committee in its individual capacity. See, e.g., Livick, 524 F.3d at 30 (holding that "a named

10   fiduciary can be liable for the acts and omissions of persons designated to carry out fiduciary

11   responsibilities") (citing 29 C.F.R. § 2509.75–8); Watson, 298 F.3d at 115 (recognizing that

12   "[m]any of our sister circuits" have spoken of "an affirmative duty to inform beneficiaries of

13   material facts about a plan"); Vartanian v. Monsanto, 14 F.3d 697, 702 (1st Cir. 1992) (holding

14   that plan administrators "had a fiduciary duty not to mislead" plaintiff).

15        **2.    Available Relief**

16             **a.    Equitable Relief under § 502(a)(3)**

17        Movants next argue that the relief sought by Plaintiff — an injunction imposing personal

18   liability on Movants for past-due monetary obligations — is a type of equitable relief not

19   available under ERISA § 502(a)(3), § 1132(a)(3). (Docket Nos. 7 at 10–12; 39 at 11–13.)

20   § 502(a)(3) allows a participant, beneficiary or fiduciary "to obtain other appropriate equitable

21   relief" to redress violations of parts of ERISA "or to enforce any provisions of this subchapter

22   or the terms of the plan." § 1132(a)(3).

1       The Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3)

2    as referring to 'those categories of relief' that, traditionally speaking (i.e., prior to the merger

3    of law and equity) 'were typically available in equity.'" CIGNA Corp. v. Amara, 131 S. Ct.

4    1866, 1878 (2011) (quoting Sereboff v. Mid Atlantic Med. Servs., 547 U.S. 356, 361 (2006))

5    (internal quotation marks and citations omitted).  In CIGNA, the Court held that in "a suit by

6    a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms

7    of a plan (which ERISA typically treats as a trust)," a district court had within its powers several

8    "traditional equitable remedies."  Id.  These included the power to grant injunctions; the power

9    to reform contracts; estoppel; and the power to order monetary "'compensation' for a loss

10   resulting from a trustee's breach of duty, sometimes called a 'surcharge.'" CIGNA, 131 S. Ct.

11   at 1879–80 (citations omitted).

12      Movants argue that CIGNA is inapposite, because that case "may only be interpreted to

13   apply to cases in which a breach of trust under ERISA is alleged and where recovery is sought

14   pursuant to a Plan . . . . "  (Docket No. 39 at 11–12.)  According to Movants, CIGNA is

15   inapplicable "to cases, such as this, that are based exclusively on a theory of estoppel purporting

16   to recover benefits in excess of that to which the participant is entitled under the Plan."  Id.

17   Movants contend that here, "Plaintiffs seek relief on the basis of a theory of promissory estoppel

18   that is unrelated to any specific claim for breach of fiduciary duty under ERISA.  Additionally,

19   Plaintiffs' estoppel theory does not seek the payment of benefits owed under the Plan." (Id. at

20   13.)

21      We reject Movants' argument.  In CIGNA, the Court sought to "remedy the false and

22   misleading information CIGNA provided" in its representations to employees.  131 S. Ct. at

1    1879.  That remedy "essentially held CIGNA to what it had promised."  Id. at 1880.  That is

2    essentially what Plaintiff seeks here.  As the Supreme Court has said, quoting Justice Story,

3    equitable estoppel "forms a very essential element in . . . fair dealing, and rebuke of all

4    fraudulent misrepresentation, which it is the boast of courts of equity constantly to promote."

5    Id. (quoting 2 J. Story, Commentaries on Equity Jurisprudence, § 1533, at 776 (12th ed. 1877)).

6    Based on these considerations, we reject Movants' argument that the form of relief sought by

7    Plaintiff is beyond a court's power under ERISA.  Id.

8              **b.    Equitable Relief under § 502(a)(1)**

9              Movants next argue that Plaintiff lacks a valid claim under ERISA § 502(a)(1).  (Docket

10   No. 7 at 12–13.)  That provision states that a "civil action may be brought" by a plan "participant

11   or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his

12   rights under the terms of the plan, or to clarify his rights to future benefits under the terms of

13   the plan." § 1132(a)(1)(B).

14             Defendants argue that Plaintiff has no claim under § 502(a)(1), because he has no valid

15   claim for benefits under the terms of the plan.  (Docket No. 7 at 12.)  Defendants cite the

16   reasoning provided by the Committee in its decision to award only seven years of credit for

17   service towards the Plan.  (Id.)  Specifically, Movants cite Article 1.34 of the Plan, which

18   provides that Plan participants are only credited for years of service while employed at Banco

19   Popular.[10]  (Id.)  Although the Plan also provides that certain other "Transferred Participants"

---

[10]  Plaintiff incorporated the Plan by reference in his complaint, and many of Plaintiff's responses in his opposition cite specific provisions of the Plan.  (Docket Nos. 24–1; 27 at 24.)  Therefore, our review of the Plan does not convert the motion to dismiss into a motion for summary judgment.  Giragosian, 547 F.3d at 65 (1st Cir. 2008); Beddall, 137 F.3d at 17 (1st Cir. 1998).  Defendants attached a copy of the Plan to their motion to dismiss. (Docket No. 7–2.)

1    may receive years of credit, Plaintiff does not meet the definition of a "Transferred Participant."

2    (Id.)  "Transferred Participants" include employees who were employed by Banco de Ponce

3    when that institution merged with Banco Popular, and who became employees of Banco Popular

4    at the time of the merger.  (Id.)  Because Defendant was not employed by Banco de Ponce at

5    the time of the merger, and did not become an employee of Banco Popular at that time, Plaintiff

6    has no valid claim for benefits under the terms of the Plan.  (Id.)

7            Plaintiff responds that nothing in the Plan prevents his eighteen years of service from

8    being credited.  He cites no case law or any specific provisions of the Plan, arguing only that

9    "[a]ll the Plan Administrator had to do was to calculate and disburse benefits based on the

10   benefit years which included the credited 18 years."  (Docket No. 27 at 25.)

11           The denial of benefits in an ERISA claim under § 502(a)(1) is subject to de-novo review

12   "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

13   eligibility for benefits or to construe the terms of the plan, in which event the court applies a

14   deferential 'arbitrary and capricious' or 'abuse of discretion' standard."  Maher v. Mass. Gen.

15   Hosp. Long Term Disability Plan, 665 F.3d 289, 291 (1st Cir. 2011) (internal quotation marks

16   and citations omitted).  In this case, Article 8.02 of the Plan gives the Committee "the exclusive

17   right to interpret the Plan and to decide any matters arising in connection with the administration

18   and operation of the Plan." (Docket No. 7–2 at 2.)  Therefore, we apply an "arbitrary and

19   capricious" or "abuse of discretion" standard to the Committee's decision.  Maher, 665 F.3d at

20   291.

21           Plaintiff has provided no arguments suggesting that the Committee's interpretation of

22   the terms of the Plan was "arbitrary and capricious" or an "abuse of discretion."  We do not

1    construe Plaintiff's claim as one that seeks "to recover benefits due to him under the terms of

2    his plan, [or] to enforce his rights under the terms of the plan." § 1132(a)(1)(B).   Rather,

3    Plaintiff argues that Movants are bound by separate commitments made to him that his eighteen

4    years would be credited.   As the Court found in <u>CIGNA</u>, we hold that the remedy Plaintiff seeks

5    "seems less like the enforcement of a contract as written and more like an equitable remedy."

6    131 S. Ct. at 1877.   As such, any relief sought by the Plaintiff must fall under § 502(a)(3), not

7    § 502(a)(1).   <u>Id.</u>

8                                    **c.    Equitable Estoppel**

9                Defendants next argue that Plaintiff's complaint should be dismissed, because the First

10   Circuit has not recognized a cause of action for equitable estoppel under ERISA and, even if

11   it did, Plaintiff has not pled the necessary elements.   (Docket Nos. 7 at 14–17.)   Again, we

12   disagree.   Although the First Circuit has "found it unnecessary to decide whether" to recognize

13   estoppel claims under ERISA, it has acknowledged that "[m]ost of our sister circuits have

14   recognized" such claims.   <u>Livick</u>, 524 F.3d at 30–31 (citing <u>Hooven v. Exxon Mobil Corp.</u>, 465

15   F.3d 566, 578 (3d Cir. 2006); <u>Mello v. Sara Lee Corp.</u>, 431 F.3d 440, 444 (5th Cir. 2005);

16   <u>Devlin v. Empire Blue Cross & Blue Shield</u>, 274 F.3d 76, 85–86 (2d Cir. 2001); <u>Bowerman</u>,

17   226 F.3d at 586; <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 403 & n.13 (6th Cir. 1998);

18   <u>Greany v. W. Farm Bureau Life Ins. Co.</u>, 973 F.2d 812, 821 (9th Cir. 1992); <u>Kane v. Aetna Life</u>

19   <u>Ins.</u>, 893 F.2d 1283, 1285 (11th Cir. 1990)).   The Supreme Court has also recognized equitable

20   estoppel claims in an ERISA context.   <u>CIGNA</u>, 131 S. Ct. at 1880.

21               On these facts, we find that Plaintiff has stated a valid equitable estoppel claim.   To state

22   a viable claim for equitable estoppel, Plaintiff must plead: 1) a definite misrepresentation of fact

1    was made; 2) Plaintiff reasonably relied on said misrepresentation to his detriment, thereby

2    changing his position for the worse; 3) Plaintiff suffered an injury or damage resulting from the

3    denial of benefits by the party that made the representation.  Law, 956 F.2d 368.

4            We find that the amended complaint satisfies these three elements.  The amended

5    complaint alleges that Ms. Mundo, of Banco Popular Puerto Rico's Benefits Department,

6    provided Plaintiff a letter on Banco Popular letterhead, indicating that his eighteen years would

7    be credited to the Plan.  (Docket No. 24–1 at 6.)  Plaintiff alleges that he relied on that

8    representation to his detriment, and was injured when he retired and received a much lower

9    pension than he expected.  (Id. at 5.)

10           Movants argue that it was unreasonable for Plaintiff to rely on Ms. Mundo's letter,

11   because the terms of the Plan unambiguously state that Plaintiff's eighteen years were not

12   eligible for credit.  (Docket No. 39 at 22–23.)   In Livick, the First Circuit held that it was

13   "inherently unreasonable" to rely on an informal statement in conflict with a clear provision of

14   the Plan.  524 F.3d at 31.  Plaintiff responds that under his reading of the Plan, nothing prohibits

15   Banco Popular from offering years of credit as a recruitment tool to new employees.  (Docket

16   No. 27 at 24.)  Plaintiff also points to Section 10.01 of the Plan, which allows the Plan to be

17   amended, retroactively or otherwise, at any time.  (Docket No. 27 at 24.)

18           The facts of this case are easily distinguished from Livick, where the communications

19   relied on by the plaintiff were "clearly identified as estimates." 524 F.3d at 31.  In that case,  the

20   plaintiff relied on estimates that included a "prominent disclaimer that the Plan trumped any

21   estimates."  Id.  Here, we cannot say that it was unreasonable for Plaintiff to rely on the letter

22   he received from Ms. Mundo, of Banco Popular's Benefits Department.  An employee could

1    reasonably think that Ms. Mundo's position, and the manner in which she expressed herself —

2    on Banco Popular letterhead, in no uncertain terms — gave her the "apparent authority" to

3    ensure that Plaintiff's eighteen years would be credited to the Plan.  Id. at 32.

4                **3.        Pre-emption of Commonwealth Law Claims**

5                Defendants next argue that Plaintiff's commonwealth law claims for breach of contract

6    are preempted by ERISA.  (Docket Nos. 7 at 17–20; 39 at 24–26.)  We agree.  ERISA's broad

7    preemption clause provides: "Except as provided in subsection (b) of this section, the provisions

8    of this subchapter . . . shall supersede any and all State laws insofar as they may now or

9    hereafter relate to any employee benefit plan . . . ." § 1144(a).  "The term 'State law' includes

10   all laws, decisions, rules, regulations, or other State action having the effect of law, of any

11   State." § 1144(c)(1).

12               The First Circuit has "held that ERISA preempts state law causes of action for damages

13   where the damages must be calculated using the terms of an ERISA plan."  Hampers v. W.R.

14   Grace & Co., Inc., 202 F.3d 44, 52 (1st Cir. 2000) (citing Carlo v. Reed Rolled, 49 F.3d 790,

15   794 (1st Cir. 1995)).  "That the very same conduct . . . underlies [Plaintiff's] state law contract

16   claim and his ERISA-benefits claim suggests that the state law claim is an alternative

17   mechanism for obtaining ERISA plan benefits."  Id.

18               The same is true here.  Plaintiff's commonwealth law claim for breach of contract relies

19   on the same alleged actions that underlie his ERISA claims.  (Docket No. 24–1 at 8–9.)  In his

20   fourth cause of action, Plaintiff simply reincorporates the same allegations that underlie his first

21   three causes of action under ERISA. (Id.)  Plaintiff also states that "[t]he measure of damages

22   is the difference between the benefits correctly owed to [him] and the reduced benefits offered

Civil No. 11-1535 (JAF)                                                                                      -17-

1    calculated at $2,397.90 monthly pay . . . . " (Id.)  This is equal to the difference between

2    Plaintiff's current monthly payment and the amount he would be paid if Movants credited his

3    eighteen years of previous employment to the Plan.

4          Because Plaintiff's breach of contract claim under commonwealth law is really only an

5    "alternative mechanism for obtaining ERISA plan benefits," we hold that it "relates" to the

6    employee benefit plan, and is preempted. Id. at 53–54.

7                                                    **IV.**

8                                              **Conclusion**

9          Given the foregoing, we hereby **GRANT IN PART** and **DENY IN PART** Movants'

10   Rule 12(b)(6) motion (Docket No. 7).  We **GRANT** Plaintiff's request for leave to amend the

11   complaint (Docket No. 24).   Plaintiff shall electronically file the Amended Complaint

12   **forthwith**.

13         Plaintiff's commonwealth law claims for breach of contract, any claims under ERISA

14   § 502(a)(1), and any claims against Popular, Inc. are **DISMISSED**.  Plaintiffs' other claims

15   remain pending.

16         **IT IS SO ORDERED.**

17         San Juan, Puerto Rico, this 29th day of March, 2012.

18                                              s/José Antonio Fusté
19                                              JOSE ANTONIO FUSTE
20                                              U.S. District Judge