1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO
3
4

ALFREDO GUERRA-DELGADO,
BELINDA BRANCH-BERRIOS,

     Plaintiffs,

     v.

POPULAR, INC., et al.,

     Defendants.

Civil No. 11-1535 (JAF)

5
6    **OPINION AND ORDER**

7    Before the court is a summary judgment motion filed by Movants, Banco Popular

8    de Puerto Rico ("BPPR"), Banco Popular North America, Inc. ("BPNA"), Plan de Retiro

9    de Banco Popular ("the Plan"), and Comité Administrativo de Beneficios de Popular, Inc.

10   ("the Committee").  (Docket No. 63.)  Plaintiff opposes.[1]  (Docket No. 71-1.)  For the

11   following reasons, we grant Movants' summary judgment motion and dismiss this case.

12   **I.**

13   **Factual Background**

14   On June 8, 2011, Plaintiff filed suit against Defendants, Popular, Inc. ("Popular,

15   Inc."), BPPR, the Plan, and the Committee.  (Docket No. 2.)  Plaintiff sought relief under

16   the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

---

[1] The lead Plaintiff in this case, to whom we refer simply as Plaintiff, is Alfredo Guerra-Delgado. Plaintiff is also representing the interests of his wife, co-plaintiff Belinda Blanch-Berríos, a purported survivor spouse beneficiary to Plaintiff's retirement benefits.  Because it does not change our legal treatment of the issues in this case, we refer simply to "Plaintiff" rather than "Plaintiffs."  As we make clear below, our judgment here dismisses all claims of both Guerra-Delgado and his wife.

Civil No. 11-1535 (JAF)                                                                -2-

1    §§ 1132(a)(1) et seq., under the federal common-law doctrine of equitable estoppel, and

2    under Commonwealth law. (Docket No. 2.)  Defendants, Popular, Inc. ("Popular, Inc."),

3    BPPR, the Plan, and the Committee filed a motion to dismiss.  (Docket No. 7.)  Plaintiff

4    also filed a motion seeking leave to amend his complaint.  (Docket No. 24.)  On

5    March 29, 2012, we issued an opinion and order, granting Plaintiff leave to amend and

6    granting in part and denying in part Defendants' motion to dismiss.  (Docket No. 52.)

7         In our order, we held that Popular, Inc. could not be sued as a fiduciary, and we

8    dismissed Plaintiff's claims under § 502(a)(1).  (Docket No. 52.)  We held that all of

9    Plaintiff's other claims remained pending against BPPR, BPNA, the Plan, and the

10   Committee.  (Id.)  Following our order, Plaintiff filed an amended complaint, (Docket

11   No. 56), and the parties completed discovery.  Movants then filed for summary judgment.

12   (Docket No. 63.)  The only claim that Plaintiff presses here is for equitable estoppel.

13   (Docket No. 71-1.)

14        At the time of our earlier order, based solely on the complaint and incorporated

15   documents, we lacked a complete picture of the relevant events.  We found that

16   Plaintiff's amended complaint set forth a plausible claim of equitable estoppel as to

17   BPPR, BPNA, the Plan, and the Committee.  See id. at 15-16 ("Here, we cannot say that

18   it was unreasonable for Plaintiff to rely on the letter he received from Ms. Mundo, of

19   Banco Popular's Benefits Department.").  Now that the parties have performed discovery

20   and submitted a detailed factual record, the merits of this case have become clear.

Civil No. 11-1535 (JAF)                                                     -3-

1    We now conclude that Plaintiff has no claim for equitable estoppel, because

2    Plaintiff did not reasonably rely on the assurances that were made to him.  See generally

3    Livick v. Gilette Co., 524 F.3d 24, 33 (1st Cir. 2008); ([T]here was no reasonable

4    reliance on the pension estimates. The grant of summary judgment is affirmed.")

5    (emphasis in original); see also Todisco v. Verizon Communications, Inc., 497 F.3d 95,

6    99 (1st Cir. 2007) (affirming district court's holding that estoppel claim not viable where

7    ERISA plan was not ambiguous).  We, therefore, grant Movants' summary judgment

8    motion and dismiss this case.

9    We derive the following facts from the parties' motions and responses, statements

10   of uncontested material facts, and exhibits.  (Docket Nos. 64; 72; 74; 84.) We note at the

11   outset that many of Plaintiff's "denials and qualifications are either irrelevant to the

12   matter at hand, add facts that should have been filed in a separate statement, or consist of

13   mere 'speculation, generalities, conclusory assertions, improbable inferences, and, for

14   lack of a better phrase, a lot of 'hot air.'"  Gomez–Gonzalez v. Rural Opportunities, Inc.,

15   658 F.Supp.2d 325, 336 n.2 (D.P.R. 2009) (internal citations omitted).  As both parties

16   have acknowledged, many of Plaintiff's statements of uncontested facts, (Docket No. 74),

17   also lack proper record citations.  See D.P.R. R. 56(c) (requiring that opposing statements

18   of fact be accompanied by record citation with specific docket entry and page number).

19   Nevertheless, we have done our best to compile a factual record that gives fair

20   consideration to Plaintiff's version of events.

Civil No. 11-1535 (JAF)                                                                    -4-

1        From 1980 to 1988, Plaintiff was employed at Banco de Ponce.  (Docket No. 64 at

2    1.)  In 1998, Plaintiff resigned from Banco de Ponce and accepted a job with FirstBank of

3    Puerto Rico.  (Id.)  In 1990, Banco de Ponce merged with BPPR.  (Id.)  Because Plaintiff

4    had resigned from Banco de Ponce two years earlier, Plaintiff was not an employee of

5    Banco de Ponce at the time of the merger.  (Id.)  From 1988 to 1995, Plaintiff was an

6    employee of FirstBank of Puerto Rico.  (Id.)  In 1995, Plaintiff resigned from FirstBank

7    and moved to the State of Florida.  (Id.)  While in Florida, Plaintiff worked as a bus

8    driver for the Osceola School District and as a driver for Hertz Car Rental.  (Id. at 2.)

9        In April 1997, Plaintiff began working in New York for what was then the New

10   York office of BPPR.  (Id. at 2-3.)  Plaintiff claims that when he was being recruited to

11   work at BPPR in New York, a BPPR employee named Angel René Guzmán ("Guzmán")

12   told Plaintiff that his eighteen years of previous employment would be counted toward

13   his pension benefits at BPPR.  Guzmán denies making any such representations.  (Docket

14   No. 64 at 4.)

15       In fact, Movants provide several uncontested statements of fact that severely

16   weaken Plaintiff's account.  Guzmán did not have the authority to make such an offer to

17   Plaintiff, and neither Guzmán nor human resources employees had ever heard of a new

18   hire receiving credit for time spent at a company other than BPPR or its affiliates.

19   (Docket No. 64 at 4-5.)  Movants have also shown that the type of offer Plaintiff claims

20   was made to him would have been unprecedented, since any such offers would have to be

21   authorized by BPPR's Board of Directors.  (Docket Nos. 64 at 4; 64-7.)

1       Plaintiff responds to such overwhelming evidence by citing his own deposition,

2   and asserting that BPPR records reflect that he was "treated as hired since 1980."

3   (Docket No. 72 at 3-4.)  Except for one mistaken letter that he received in 2000, and a

4   number of erroneous estimates, there is no evidence to support Plaintiff's claim.

5       On December 31, 1998, BPPR's Plan was frozen as it applied to employees of

6   BPPR's New York office.  (Docket No. 64 at 11.)  In January 1999, a new entity--Banco

7   Popular N.A. ("BPNA")--was formed in New York.  (Id.)  After that, many employees of

8   BPPR's New York office, including Plaintiff, became employees of the new entity,

9   BPNA.  Beginning in January 1999, these employees no longer accrued benefits under

10  BPPR's Plan.  (Id.)

11      In December 1999, Plaintiff left his position with BPNA in New York.  In January

12  2000, Plaintiff began working for BPPR in Puerto Rico.[2]  At the time of his transfer and

13  orientation in Puerto Rico, Plaintiff did not ask for, nor did he receive, any written

14  documents discussing the impact that his transfer might have on any pension benefits he

15  had accrued.   (Docket No. 64 at 5-6.)

16      In June 2000, approximately six months after beginning work at BPPR in Puerto

17  Rico, Plaintiff received a letter from Ms. Madeline Mundo, of BPPR's Benefits

18  Department.  (Docket No. 74-1.)   The letter stated the following: "Having been an

19  employee of Banco Popular North America from February 1, 1980 until December 31,

20  1998, these years of service will be considered as years of credit for purposes of the

---

[2] Plaintiff says that he was transferred to BPPR in Puerto Rico; Movants say that he resigned from Banco Popular, N.A., and sought employment with BPPR in Puerto Rico.

1    Banco Popular Pension Plan." (Id.)  Clearly, the central premise on which this letter is

2    based was a mistake: From 1980 to 1998, Plaintiff had not been an employee of BPNA.

3    During this time, Plaintiff had been an employee of Banco de Ponce, FirstBank, and the

4    Osceola School District.  There is no reason to think that the time Plaintiff spent as a bus

5    driver in Florida would be counted toward his pension plan at BPPR.  If Plaintiff did in

6    fact rely on this letter, it was unreasonable for him to do so.

7          Plaintiff did not contact Ms. Mundo or anyone else at BPPR to inquire into this

8    mistake.  Plaintiff's explanation is that the letter accurately reflected an agreement that

9    was reached between him and BPPR when Plaintiff was recruited to work there in 1997.

10   (Docket No. 72 at 8-9.)  But the letter from Ms. Mundo does not mention any such

11   "agreement" or that Plaintiff's years were "treated as" if he were an employee of BPPR.

12   (Docket No. 74-1.)  Rather, the letter states in plain terms that Plaintiff had been an

13   employee of BPPR from 1980 to 1998.  This was clearly an error.  If Plaintiff truly

14   believed that these years were being credited to his plan pursuant to some "agreement,"

15   one would expect there to be some written evidence of the agreement.  There is none.[3]

16   At a minimum, one would expect Plaintiff to have contacted someone from BPPR to

17   confirm what he believed to be the operative agreement.  Plaintiff did nothing.

18         From 2000 to 2007, BPPR gave Plaintiff annual written estimates of his future

19   pension benefits, called "Total Compensation Reports."  (Docket Nos. 64 at 7; 74 at 7.)

20   BPPR  provided  these  estimates  to  all  active  employees  who  participated  in  the

---

[3] Plaintiff writes that the employee records were destroyed or lost by BPPR.  (Docket No. 74 at 5.)  But Plaintiff does not explain why he did not retain any written evidence of the agreement for his own records.

Civil No. 11-1535 (JAF)                                                           -7-

1    company's benefits plans.  (Docket No. 64 at 7.)  The parties have submitted portions of

2    the estimates for the years 2000, 2003, 2004, 2005, 2006, and 2007.  (Docket Nos. 64-8;

3    64-9; 64-10; 64-11.)  Importantly, these estimates contain a clear disclaimer, found under

4    a header that is printed in bold and italic caps, and underlined.   A representative

5    disclaimer appeared in the 2004 report. The disclaimer read:

6                          **IMPORTANT INFORMATION**:

7              Although we have taken the measures to assure the accuracy of the
8              information, the possibility of error always exists.  The availability
9              and the amounts that your benefits amount to will always be
10             governed by the legal documents and official policies of each plan.
11             This report is not a legal document.
12
13             This report does not represent an employment agreement nor a
14             commitment of eligibility for future benefits. We constantly evaluate
15             our program benefits, and the Bank may improve, modify or
16             terminate any of the benefits plans that are mentioned.
17
18   (Docket No. 64-8) (emphasis in original).

19          In Plaintiff's case, these estimates did err by repeatedly overestimating the number

20   of employment years that would be credited to his pension.  (Docket Nos. 64-8; 64-9; 64-

21   10; 64-11; 74-2.)  Plaintiff attaches a page of the estimate he received in 2000, which

22   wrongly states that Plaintiff had 20.83 years of service for eligibility, and 19.83 years of

23   service for credit.  (Docket No. 74-2.)  The 2004 estimate that Plaintiff received listed

24   24.83 and 23.83 as the years of service for eligibility and credit.  (Id.)

25          In 2005, BPPR discontinued its existing benefits structure.  (Docket No. 74 at 8.)

26   These changes did not affect employees who had accrued more than ten years toward

27   retirement benefits.  (Id.)  As part of the reorganization, BPPR offered compensation to

1    affected employees who had less than ten years of employment.  (Id.)  Plaintiff was not

2    offered, and did not receive, this compensation.  (Id. at 9.)

3          Near the end of 2008, Plaintiff contacted BPPR regarding his potential benefits if

4    he were to retire.  (Docket No. 74 at 9)  Plaintiff received an e-mail from José Torres

5    ("Torres"), of BPPR's Retirement Plans Unit, Division of Compensation and Benefits,

6    dated September 8, 2008.  (Id.)  Torres' email estimated that Plaintiff would receive

7    approximately $2,371.59 per month, depending on which option Plaintiff chose.  (Id.)

8    Plaintiff also received an "Estimated Pension Calculation" that stated that he would

9    receive approximately $2,400 a month, depending on the retirement option he chose.

10   (Docket No. 74-7.)  That "Estimated Pension Calculation" contained a clear disclaimer at

11   the bottom saying that the actual amount of benefit could change based on eligibility,

12   vesting, and employee status.  (Id.)  Plaintiff never spoke with anyone from BPPR's

13   benefits or human resources departments to clarify that he had not actually worked at

14   BPPR or its affiliates from 1980 to 1998.  (Docket No. 64 at 13.)

15         On December 1, 2008, Plaintiff gave notice that he was planning to retire.

16   (Docket No. 74 at 10.)  In January 2009, BPPR's Retirement Plan Unit analyzed

17   Plaintiff's entitlement under the Plan, including his years of eligibility and his

18   employment history.  (Docket No. 64 at 13.)  While conducting this analysis, BPPR

19   employees realized that BPPR's records contained an error: The records incorrectly

20   indicated that Plaintiff had been an employee of BPPR and/or BPNA since 1980.  (Id.)

21   BPPR officers could not find any record suggesting that Plaintiff had been an employee

Civil No. 11-1535 (JAF)                                                               -9-

1    of BPNA or BPPR before 1997.  (Docket No. 64 at 14.)  Nor did they find any evidence

2    of an agreement crediting Plaintiff's years of employment from 1980 to 1998.  (Id.)

3          Plaintiff retired in or near February 2009.[4]  In a letter dated March 19, 2009,

4    Torres notified Plaintiff that he had only seven years of service for credit toward the Plan.

5    (Docket No. 74 at 11.)  These years comprised the time that Plaintiff worked for BPPR

6    from April 29, 1997, through December 31, 1998, and from January 18, 2000, through

7    December 31, 2005.  (Docket No. 74-8.)  This made Plaintiff eligible for a monthly

8    payment of $570.87.   (Id.)   The letter also informed Plaintiff that based on this

9    calculation, Plaintiff had been erroneously denied the compensation offered in 2005 to

10   employees who had accrued less than ten years of employment.  (Id.)  Popular, Inc.,

11   therefore, offered to pay Plaintiff this compensation, in the amount of $18,137.  (Id.)

12         In a May 2009 letter written by his attorney, Plaintiff requested reconsideration of

13   this decision, claiming a higher number of years of service for eligibility and credit.

14   (Docket No. 74 at 11.)   Plaintiff argued that the correct figures are 25.83 years of

15   eligibility and 24.83 years of credit.  (Id.)  In a letter dated July 29, 2009, the Committee

16   reiterated its calculation of monthly benefits at $570.87, and again offered to pay Plaintiff

17   $18,137 in back pay.  (Id. at 11-12.)

18                                         **II.**

19                        **Summary Judgment Under Rule 56**

---

[4] Neither party states the exact date of Plaintiff's retirement, though we can surmise that it was after January 21 and before March 19, 2009. (Docket No. 74 at 11.) Plaintiff writes that it was his plan to retire on February 1, 2009. (Id. at 10.)

Civil No. 11-1535 (JAF)                                                                    -10-

1        We must grant a motion for summary judgment "if the pleadings, the discovery

2    and disclosure materials on file, and any affidavits show that there is no genuine dispute

3    as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

4    Civ. P. 56(a).  A factual dispute is "genuine" if it could be resolved in favor of either

5    party and "material" if it potentially affects the outcome of the case.  Calero-Cerezo v.

6    U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

7        The movant carries the burden of establishing that there is no genuine dispute as to

8    any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The movant may

9    satisfy this burden by "citing to particular parts of materials in the record, including

10   depositions, documents, electronically stored information, affidavits or declarations, . . .

11   or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Furthermore, to establish the absence of

12   a genuine dispute of material fact, the movant need not produce evidence but may instead

13   point to a lack of evidence supporting the nonmovant's case.  See Fed. R. Civ.

14   P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325.  "Once the moving party has made a

15   preliminary showing that no genuine [dispute] of material fact exists, the nonmovant

16   must produce specific facts, in suitable evidentiary form, to establish the presence of a

17   trialworthy [dispute]."  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal

18   quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

19       In evaluating a motion for summary judgment, we must view the record in the

20   light most favorable to the nonmovant.  See Reeves v. Sanderson Plumbing Prods., 530

21   U.S. 133, 150–51 (2000).  "The court need consider only the cited materials, but it may

22   consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

23                                            **III.**

24                                         **Analysis**

Civil No. 11-1535 (JAF)                                                    -11-

1       Movants argue that they are entitled to summary judgment on Plaintiff's "sole

2    remaining claim" of equitable estoppel.  (Docket No. 63 at 2, 4.)  Movants advance three

3    arguments in support of their motion: 1) Plaintiff's reliance on Defendants' assurances

4    was unreasonable in light of clear terms of the Plan; 2) Plaintiff's bad faith precludes him

5    from any equitable recovery; and 3) BPNA cannot be held liable as a fiduciary.  (Docket

6    No. 63.)   In his opposition, Plaintiff responds to all three of Movants' arguments.

7    (Docket No. 71-1.)  Plaintiff does not raise any additional arguments or claims.  (Id.)

8    Because we agree with Movants' first argument, and dismiss on those grounds, we need

9    not definitively resolve their second and third arguments.

10       Plaintiff argues that he has a viable claim of equitable estoppel.  (Docket No. 71-

11   1.)  Although the First Circuit has "found it unnecessary to decide whether" to recognize

12   estoppel claims under ERISA, it has acknowledged that "[m]ost of our sister circuits have

13   recognized" such claims.  Livick, 524 F.3d at 30–31 (citing Hooven v. Exxon Mobil

14   Corp., 465 F.3d 566, 578 (3d Cir. 2006); Mello v. Sara Lee Corp., 431 F.3d 440, 444 (5th

15   Cir. 2005); Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 85–86 (2d Cir.

16   2001); Bowerman, 226 F.3d at 586; Sprague v. Gen. Motors Corp., 133 F.3d 388, 403 &

17   n.13 (6th Cir. 1998); Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th

18   Cir. 1992); Kane v. Aetna Life Ins., 893 F.2d 1283, 1285 (11th Cir. 1990)).  The Supreme

19   Court has also recognized equitable estoppel claims in an ERISA context.  CIGNA, 131

20   S. Ct. at 1880.

21       The First Circuit has made clear that a valid ERISA estoppel claim may exist only

22   where the Plan terms are ambiguous.  See, e.g., Livick, 424 F.3d at 31 ("courts which do

Civil No. 11-1535 (JAF)                                                       -12-

1    recognize ERISA-estoppel do so only when the plan terms are ambiguous") (collecting

2    cases).  This firmly-established rule has often been repeated in this and other circuits.

3    See Mello, 431 F.3d at 447 (noting "the clear and consistent case law forbidding

4    recognizing reasonable reliance on informal documents in the face of unambiguous Plan

5    terms"); Sprague, 133 F.3d at 404 ("[E]stoppel can only be invoked in the context of

6    ambiguous plan provisions."); Greany, 973 F.2d at 822 (barring any ERISA-estoppel

7    claims "based upon statements of a plan employee which would enlarge [the

8    beneficiary's] rights against the plan beyond what he could recover under the

9    unambiguous language of the plan itself"); Coleman v. Nationwide Life Ins. Co., 969

10   F.2d 54, 59 (4th Cir.1992) ("Equitable estoppel principles. . . have not been permitted to

11   vary the written terms of a plan.").

12        We now conclude that Plaintiff's claim fails because it was unreasonable for

13   Plaintiff to rely on assurances that contradicted the clear terms of the Plan.   See Livick,

14   524 F.3d at 31 (finding it "inherently unreasonable" to rely on an informal statement in

15   conflict with a clear provision of the Plan).  As the First Circuit has repeatedly explained,

16   "a plan beneficiary might reasonably rely on an informal statement interpreting an

17   ambiguous plan provision; if the provision is clear, however, an informal statement in

18   conflict with it is in effect purporting to modify the plan term, rendering any reliance on

19   it inherently unreasonable." Livick, 524 F.3d at 31 (citing Law, 956 F.2d at 370; Todisco,

20   497 F.3d at 102).

21        In this case, the terms of the Plan are clear.  Article 1.34 of the Plan states clearly

22   that "Years of Credit" are calculated by measuring "all years of service . . . while an

Civil No. 11-1535 (JAF)                                                      -13-

1    employee." (Docket No. 64-4 at I-19.) Under Article 1.11, "employee" is clearly

2    defined as "any person who is employed by the Employer." (Docket No. 64-4 at I-11.)

3    And in Article 1.13, the term "Employer" is clearly defined as BPPR "or an Affiliated

4    Company . . . which has expressly adopted the Plan in accordance with adoption

5    procedures established by Popular, Inc. in its sole discretion." (Docket No. 64-4 at I-11.)

6    Plaintiff argues that by including certain other companies—such as Inversiones

7    Internacionales Incorporado, Banco Crédito y Ahorro Ponceño, and International General

8    Electric, Puerto Rico, Inc.—the Plan's terms are ambiguous. (Docket No. 71-1 at 14.)

9          Plaintiff's argument makes no sense. The criteria that determine which companies

10   are Affiliated Companies are clearly spelled out in Article 1.13. Moreover, it is

11   undisputed that Plaintiff did not work for any of these affiliated companies. Plaintiff did

12   work for Banco de Ponce for a time until 1988. But, as we noted in our earlier opinion

13   and order, because Plaintiff was not employed at Banco de Ponce at the time of the

14   merger on December 31, 1990, the clear terms of the BPPR Plan preclude him from

15   receiving credit for that time.[5] (Docket No. 52 at 12-13.) Given the clear terms of the

16   Plan, it was unreasonable for Plaintiff to rely on any purported assurances that he would

17   receive credit for the years he was not an employee of BPPR.

18         Plaintiff argues that under his reading of the Plan, nothing prohibits BPPR from

19   offering years of credit as a recruitment tool to new employees. (Docket No. 71-1.) This

20   argument is again foreclosed by First Circuit precedent. In Livick, 524 F.3d at 31, the

---

[5] Plaintiff does not argue that these years should be credited under the terms of the Plan. Article 1.13 of the Plan states that "Effective prior to December 31, 1990, Banco Popular de Puerto Rico was the Employer with respect to the Banco Popular de Puerto Rico Retirement Plan and Banco de Ponce was the Employer with respect to the Banco de Ponce Pension Plan." (Docket No. 64-4 at I-11.)

1    plaintiff also argued that he reasonably believed the plan had been amended, "perhaps as

2    part of [a] special severance package." Id. at 32.  The Livick plaintiff pointed to the right

3    of the company to amend the plan at any time, and to the repeated mistaken estimates that

4    he received.  Id.

5          The First Circuit rejected the plaintiff's argument.  See id.  Under the clear terms

6    of the Plan, the court held, "any change to the method of calculation could only have

7    come from on high: the Compensation Committee of the Board of Directors."  Id.  The

8    same is true here: Article 10.01 of the Plan authorizes BPPR as a corporate entity to

9    amend the Plan, but not by unilateral action of Ms. Mundo, Mr. Guzmán or Mr. Torres.

10   (Docket No. 64-5 at 28.)  The "Total Compensation Reports" that Plaintiff received,

11   similar to the ones in Livick, contained a clear disclaimer that contradicted Plaintiff's

12   claim of apparent authority.  See Livick, 524 F.3d at 31 n.7 (noting that the

13   communications were "clearly identified as estimates.").  Plaintiff should have known

14   that in case of conflict, the clear terms of the Plan would govern.

15          Plaintiff's "situation is not an unusual one.  Even assuming utter good faith on

16   [Plaintiff's] part, other courts have denied claims on facts much more compelling than

17   his." Livick, 524 F.3d at 32.  The facts of this case are very similar to the ones in Mello,

18   431 F.3d at 442, which the First Circuit has cited approvingly.  In Mello, an employee

19   was entitled to credit for years he worked at a company that had been acquired by his

20   current employer, Sara Lee.  Id.  But the statements he received from Sara Lee

21   mistakenly double-counted the time that plaintiff had worked for his previous employer.

1    Id.  When the error was finally discovered, Plaintiff's actual monthly pension payments

2    were $5,500 less than what he had been told.  Id.

3         The Fifth Circuit held that there was no claim for equitable estoppel, because the

4    terms of the Plan were clear.  See id. at 448.  The court held that plaintiff should have

5    known that the mistaken estimates were just that—a mistake.  If anything, it was more

6    unreasonable for this Plaintiff to rely on the mistaken representations he received than it

7    was for the plaintiffs in Mello.  An error of double-counting would be easy enough to

8    miss for an employee who knew that his previous years of employment were being

9    counted under the Plan.  See Mello, 431 F.3d at 444.  But here, Plaintiff should have

10   known that the years he spent working for Banco de Ponce (before the merger),

11   FirstBank, and the Osceola School District would not be counted toward his pension.

12   Under the clear terms of the written Plan, Plaintiff had no right to have his prior years of

13   employment counted.  Plaintiff should have known, and perhaps did know, that any

14   estimates crediting these eighteen years were mistaken.

15        Plaintiff argues that this case is like the one in Pell v. E.I. DuPont De Nemours &

16   Co., Inc., 539 F.3d 292 (3d Cir. 2008).  We are not persuaded.  First, because Pell is not

17   from this circuit, it is not binding.  More fundamentally, though, the facts in Pell are

18   clearly distinguishable from this case.  In Pell, the plaintiff had several good reasons for

19   relying on the assurances his employer provided.  In this case, Plaintiff had none.

20        First, in Pell, the plaintiff had been an employee of DuPont or its affiliate for every

21   year that the employee was claiming as credit.  See Pell, 539 F.3d at 297.  Here, by

22   contrast, there is no dispute that Plaintiff was not an employee of BPPR or its Affiliated

1    Companies from 1980 to 1998.  Second, the plaintiff in <u>Pell</u> had in evidence a letter that

2    he received from his employer's Director of Employee Compensation and Benefits.  <u>See</u>

3    <u>id.</u> at 298.  The letter, which the plaintiff received while considering whether to accept a

4    transfer to DuPont, promised him that he would receive full credit for the years he had

5    worked at DuPont's affiliate.  <u>See</u> <u>id.</u>

6          None of these crucial facts are present in this case.  Here, Plaintiff has no proof

7    under Rule 56 standards that he received any assurances that his previous employment

8    years would be credited to his Plan.  Moreover, even if Guzmán had made such

9    representations to Plaintiff—a fact that we seriously doubt—these assurances would have

10   lacked proper authorization or legal force.  These considerations are more than enough to

11   distinguish Plaintiff's case from <u>Pell</u>.

12         Movants argue additionally that Plaintiff lacks good faith and that BPNA cannot

13   be held liable as a fiduciary.  (Docket No. 63.)  Plaintiff opposes these arguments.

14   (Docket No. 71-1.)  We note that while Movants' arguments may be correct, <u>see</u>

15   <u>Dr. Jose S. Belaval, Inc. v. Perez-Perdomo</u>, 488 F.3d 11 (1st Cir. 2007) (discussing

16   unclean hands doctrine), we need not definitively resolve them, in light of our finding

17   that Plaintiff did not reasonably rely on Defendants' assurances.

18         Certainly, bad faith on Plaintiff's part is a likely explanation for what happened

19   here.  It seems strange that Plaintiff never requested, nor received, written confirmation

20   of the purported "agreement" that his previous eighteen years of employment would be

21   credited.  If Plaintiff truly believed that this was part of his employment contract, one

22   would have expected him to secure this in writing from someone.  There is no evidence

Civil No. 11-1535 (JAF)                                                      -17-

1    that Plaintiff did so.   From the uncontested evidence before us, the most logical

2    explanation is that Plaintiff knew he had received mistaken information, and intentionally

3    stayed silent to prevent these mistakes from being detected. Regardless of the

4    explanation, however, he has no claim for estoppel, given the clear terms of the Plan.

5          Finally, we doubt that Plaintiff could have made any additional claims here, for

6    example for breach of fiduciary duty.  See Livick, 424 F.3d at 31 (no breach of fiduciary

7    duty where ministerial errors caused mistaken estimates).  The facts support Movants'

8    contention[6] that this entire case resulted from an "administrative mistake."  See id.; see

9    also Stark v. Mars, Inc., 2013 WL 1908889, at *6 (6th Cir. May 9, 2013) (no breach of

10   fiduciary claim where Committee's misrepresentations were result of third party's

11   ministerial calculations); Hart v. Equitable Life Assurance Soc'y, 75 Fed. Appx. 51, 52-

12   53 (2d Cir. 2003) (no breach of fiduciary duty where data-entry error generated erroneous

13   pension estimate).

14         In any case, Plaintiff's failure to raise any additional arguments in his opposition,

15   (Docket No. 71-1), means that any such arguments are waived.  See Landrau–Romero v.

16   Banco Popular De Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000) (appellant's failure to

17   raise an argument in his opposition to summary judgment results in waiver); Instituto De

18   Educacion Universal Corp. v. Great Lakes Higher Educ. Guaranty Corp., 126 Fed. Appx.

19   119, 7 Ed. Law Rep. 52 (1st Cir. 2005) (same) (citing Landrau-Romero, 212 F.3d at 612).

---

[6] See Docket No. 63 at 3.

Civil No. 11-1535 (JAF)                                                                    -18-

1        For the foregoing reasons, Movants' summary judgment motion is **GRANTED**.

2     Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

3        **IT IS SO ORDERED.**

4        San Juan, Puerto Rico, this 5th day of July, 2013.

5                                                            S/José Antonio Fusté
6                                                            JOSE ANTONIO FUSTE
7                                                            U. S. DISTRICT JUDGE